UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARCHIE CRANFORD,<br><br>             Plaintiff,<br><br>        v.<br><br>ANGELA BADAGON, et al.,<br><br>             Defendants.<br>_____<br><br>CONSOLIDATED ACTION<br>_____ | Case No.: 1:11-cv-00736-LJO-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANT PERRYMAN'S AND DEFENDANT HARDER'S MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 59)<br><br>TWENTY-ONE DAY DEADLINE |

**I.     Introduction**

Plaintiff Archie Cranford ("Plaintiff") is a civil detainee proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. On December 17, 2013, the court consolidated Cranford v. Badagon, 1:11-cv-00736 LJO BAM, with Cranford v. Perryman, et al., 1:13-cv-00906 LJO BAM.  This action now proceeds against Defendant Balcagon for excessive force in violation of the Fourteenth Amendment and against Defendants Perryman and Harder for failure to protect in violation of the Fourteenth Amendment.[1]

---

[1] Defendant Balcagon was sued erroneously as "Angela Badagon."  Defendant Harder was sued erroneously as "Charlotte Havder."

1   On April 23, 2014, Defendants Perryman and Harder filed a motion for summary judgment.[2]
2   (ECF No. 59.) On May 8 and May 12, 2014, Plaintiff opposed the motion. (ECF Nos. 64, 66.)
3   Defendants Perryman and Harder replied on May 19, 2014. (ECF No. 68.) The motion is deemed
4   submitted. Local Rule 230(l).

**II.     Plaintiff's Request to Strike Defendants' Motion for Summary Judgment**

In his initial opposition filed on May 8, 2014, Plaintiff contends that Defendants' motion for summary judgment should be stricken because discovery has not closed in this action. (ECF No. 64.) Pursuant to the Amended Discovery and Scheduling Order issued on December 18, 2013, discovery on Plaintiff's claims against Defendants Perryman and Harder closed on March 22, 2014. (ECF No. 41.) Defendants Perryman and Harder filed the present motion for summary judgment on April 23, 2014, which was after the close of discovery.

Plaintiff also appears to contend that Defendants' counsel improperly deposed him in 2014 after the actions were consolidated, but before discovery opened. Plaintiff has not provided any support for his contention. Further, as noted above, discovery on Plaintiff's claims against Defendant Perryman and Harder opened in this consolidated action on December 18, 2013, and closed on March 22, 2014. Therefore, defense counsel was not precluded from deposing Plaintiff during that time frame. Based on the record before the Court, Plaintiff was deposed on March 20, 2014, before the close of discovery. (ECF No. 59-1, Ex. 2.)

For these reasons, Plaintiff's request to strike Defendants' motion for summary judgment should be denied.

**III.    Defendants' Motion for Summary Judgment**

**A. Legal Standard for Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(a) summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Summary judgment must be entered, "after adequate time for discovery

---

[2] Concurrent with the motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment. (ECF No. 59, pp. 2-4); see Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1988); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  However, the court is to liberally construe the filings and motions of pro se litigants.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (internal quotations and citations omitted).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.

The parties bear the burden of supporting their motions and oppositions with the papers they wish the Court to consider and/or by specifically referencing any other portions of the record for consideration.  Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).  The Court will not undertake to scour the record for triable issues of fact.  Simmons v. Navajo County, Arizona, 609 F.3d 1011, 1017 (9th Cir. 2010).

In arriving at these findings and recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties.  Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection.  This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

///

**B.  Summary of Relevant Allegations**

Plaintiff alleges that on May 20, 2013, Defendants Perryman and Harder transferred Plaintiff from Unit Two at Coalinga State Hospital to Unit One.  Jonny Lopez, a Unit Two Nurse, warned Defendants that placing Plaintiff in Unit One would present a danger to Plaintiff's life and health because Angela Balcagon, a nurse who worked in Unit One, had allegedly harmed Plaintiff on a prior occasion.  Twenty minutes after Defendants Perryman and Harder transferred Plaintiff to Unit One, Nurse Balcagon struck Plaintiff in the face with a broom handle.

**C.     Statement of Undisputed Material Facts ("UMF")**

1. Plaintiff is a civil detainee at Coalinga State Hospital.  (Defs' Ex. 1, Pl's Dep. 9:7-9.)

2. Plaintiff alleges that on May 20, 2013, Defendants Perryman and Harder force moved him into Unit One despite being warned by Johnny Lopez that Ms. Angela Balcagon was threat to him because of an ongoing lawsuit, Case No. 1:11-cv-00736-JLT.  (Doc. 6 in Case No. 1:13-cv-00906-LJO-BAM, Pl's First Amended Complaint.)

3. On August 5, 2013, this court ruled that "the Court presumes that Nurse Lopez specifically apprised Defendants about Nurse Badagon [sic].  As such, Plaintiff states an Eighth Amendment claim against Defendants for their failure to protect.  Therefore, it logically follows that Plaintiff states a cognizable claim under the Fourteenth Amendment."  (Doc. 8 in Case No. 1:13-cv-00906-LJO-BAM.)

4. Plaintiff admits that he did not find Ms. Balcagon to be a threat to his safety.  (Defs' Ex. 1, Pl's Dep. 44:5-45:13.)

5. Plaintiff testified that, after the first incident, he and Ms. Balcagon joked and kidded around.  (Id.)

6. While Plaintiff claims that Nurse Johnny Lopez was present when Defendants Perryman and Harder told him he was being transferred, he states that Mr. Lopez said nothing.  (Defs' Ex. 2, Pl's Dep. 24:23-25:17.)

7. Defendant Harder completed the Psychiatric Technician Program at West Hills Community College in 2005 and has been licensed as such since November 2006.  (Harder Dec. ¶ 2.)

4

8. From 2006 through 2007, Defendant Harder worked as a Psychiatric Technician (Psych Tech) – Porterville Developmental Center. Her duties and responsibilities included basic nursing and psychiatric care, documentation, patient assessments, therapeutic activities, treatment plan implementation, group process, observation and encouragement. (Id. at ¶ 3.)

9. From 2008 through 2010, Defendant Harder studied at Hanford Adult School to be a Licensed Vocational Nurse. She began working at Coalinga State Hospital ("CSH") as a Psych Tech in July 2012. (Id. at ¶ 4.)

10. Defendant Harder was assigned April 1, 2013, to Unit 2 at CSH as a Case Manager. Defendant Harder scheduled treatment teams and acted as a go between for patient-staff-clinicians. (Id. at ¶ 5.)

11. Defendant Harder met Plaintiff in April 2013, in Unit 2, where he was housed as a patient. (Id. at ¶ 6.)

12. Plaintiff was transferred to Unit 1 in May 2013 because of the need to vacate a bed in Unit 2. Defendant Harder was informed by Defendant Perryman that a patient on another unit at DSH-C had been sexually assaulted so this other patient needed a bed on Unit 2. A list of Unit 2 patients, that included Plaintiff, was compiled and sent to Unit 1, to determine who would be transferred to Unit 1. The Unit 1 team chose Plaintiff. Defendant Harder had no role in the final decision-making process. (Id. at ¶ 7.)

13. Defendant Harder's sole role in Plaintiff's move to Unit 1 was to accompany Defendant Perryman to inform Plaintiff, on May 20, 2013, that he was being transferred. (Id. at ¶ 8.)

14. Defendant Harder was not aware of the actual transfer until May 20, 2013. (Id. at ¶ 9.)

15. At no time prior to Plaintiff being transferred to Unit 1 did Defendant Harder have any knowledge regarding Plaintiff having any type of concerns of being transferred to Unit 1. (Id. at ¶ 11.)

16. If Defendant Harder would have known of a risk to Plaintiff because of a threat posed to him by anyone in Unit 1, she would have done what was within her authority to prevent the transfer. Patient care and safety are her primary concern. (Id. at ¶ 11.)

17. According to Plaintiff, the only thing he said to Defendant Perryman was that there was a person on unit one that he was not friends with. He expressed nothing about a threat to his safety. (Defs' Ex. 2, Pl's Dep. 22:10-14.)

18. Defendant Perryman attended West Hills Community College from 2006-2007 and completed her Psychiatric Technician Program in December 2007. (Perryman Dec. ¶ 2.)

19. Defendant Perryman was hired at CSH in February 2008 as a pre-licensed Psychiatric Technician (PLPT). She passed her boards and was licensed in March 2008. Her duties as a Psych Tech included assisting in the daily care for the mentally ill/SVP population at CSH, observing patients while they had their meals, facilitating supplemental groups, dayroom coverage, shaves, census rounds, locker searches, therapeutic interactions, courtyard coverage and other assigned tasks. As a licensed Psych Tech I, she performed the same duties and was able to pass medications and cover as shift lead/alternate shift lead. (Id. at ¶ 3.)

20. In January 2011, Defendant Perryman was promoted to Senior Psych Tech and shift lead. As such, she supervised five other Psych Techs, an Assistant Shift Lead and two RN's. As a Shift Lead, her responsibilities included overseeing the daily care for the mentally ill/SVP population at Coalinga State Hospital. As an SPT, she would delegate specific tasks to other Psych Techs, Psych Tech Assistants, Registered Nurses and PLPT to ensure that the daily functions of the unit were completed. These included observing patients while having their meals, showers, dayroom coverage, medication administration, courtyard coverage, treatments, census rounds, locker searches, therapeutic interactions, supplemental groups. She also trained new employees to ensure that they were aware of hospital policies and procedures and were able to complete tasks on their own. (Id. at ¶ 4.)

21. In August 2012, Defendant Perryman was promoted to Unit Supervisor of Unit 2, where she supervised 25 staff and worked on evaluation teams that included clinicians and nurses. She did not, however, make determinations on patient care, that being done by the clinicians. (Id. at ¶ 5.)

22. Defendant Perryman first met Plaintiff in August of 2012. (Id. at ¶ 6.)

23. Regarding Plaintiff's May 21, 2013 transfer, this was done to make room in Unit 2 for a sexual assault victim. The Unit 2 treatment team compiled a list of patients suitable for transfer. Plaintiff was part of a list of patients that were suitable for transfer. The list was compiled by a team

that consisted of a PsyD, LCSW, rehabilitative therapist and a treatment nurse.  The PsyD is the team lead.  (Id. at ¶ 7.)

24.     This list was sent to the Unit 1 team.  They chose Plaintiff.  (Id. at ¶ 8.)

25.     Defendant Perryman was informed of the transfer on the morning of May 20, 2013. (Id. at ¶ 9.)

26.     On May 20, 2013, Defendant Perryman went to inform Plaintiff that he was to be transferred to Unit 1.  At that time, he expressed no concerns regarding Angela Balcagon.  (Id. at ¶ 10.)

27.     At no time prior to May 20, 2013, did Defendant Perryman have any knowledge regarding any difficulties or issues Plaintiff had with Angela Balcagon.  (Id. at ¶ 11.)

28.     If Defendant Perryman had known of a risk to Plaintiff, she would have done everything she could within her authority to prevent the transfer.  (Id. at ¶ 12.)

**D.     Discussion**

As a civil detainee, Plaintiff's right to personal safety is protected by the substantive component of the Due Process Clause of the Fourteenth Amendment. Youngberg v. Romeo, 457 U.S. 307, 315, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982).  Under this provision of the Constitution, Plaintiff is "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Jones v. Blanas, 393 F.3d 918, 931 (9th Cir. 2004) (quoting Youngberg, 457 U.S. at 321–22).  Thus, to avoid liability, Defendants' decisions must be supported by "professional judgment." Youngberg, 457 U.S. at 323. A defendant fails to use professional judgment when his or her decision is "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that [he or she] did not base the decision on such a judgment." Youngberg, 457 U.S. at 323.

Here, Defendants Perryman and Harder contend that there are no genuine disputes of material fact as to Plaintiff's claims against them.  Defendants first contend that Plaintiff has admitted that he did not feel threatened by Angela Balcagon and, therefore, she could not be considered a serious threat.  (ECF No. 59, p. 8.)  Defendants next contend that Plaintiff cannot demonstrate that Defendants Perryman and Harder had any knowledge of a risk to Plaintiff's safety prior to his transfer.  Although

7

1  Plaintiff claims that Mr. Lopez was present at the time of the transfer, Plaintiff admits that Mr. Lopez
2  said nothing to Defendants regarding any supposed risk.  (ECF No. 59, p. 9.)

3  Plaintiff counters that Defendants Perryman and Harder forced Plaintiff into Unit 1.  (ECF No.
4  66, pp. 3, 5.)  Plaintiff also asserts that both Defendants were fully aware of previous extremely
5  violent and hostile interactions toward Plaintiff.  (ECF No. 66, p. 2.)

6  The Court finds no genuine dispute of material fact as to Plaintiff's claims against Defendants
7  Perryman and Harder.  The undisputed evidence reflects that Defendants Perryman and Harder did not
8  select Plaintiff for the move to Unit 1 and were not responsible for his transfer.  UMF 12, 23, 24.
9  Further, Plaintiff admitted that Angela Balcagon was not a threat to him.  UMF 4, 5.  Plaintiff also
10 admitted that Mr. Lopez did not tell Defendants Perryman and Harder anything when they informed
11 Plaintiff that he was going to be moved to Unit 1.  UMF 6.  The undisputed evidence also reflects that
12 Plaintiff did not express any concerns regarding safety to Defendant Perryman when he was notified
13 of the move.  UMF 17.  Based on the record before the Court, there is no evidence that Defendants
14 Perryman and Harder were aware of any threat to Plaintiff's safety from Angela Balcagon prior to his
15 move to Unit 1.  Accordingly, summary judgment should be granted in favor of Defendants Perryman
16 and Harder.

### IV.    Conclusion and Recommendation

For the reasons discussed above, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion to strike Defendants' motion for summary judgment be denied;
2. Defendants' motion for summary judgment, filed on April 23, 2014, be granted; and
3. Judgment be entered in favor of Defendants Perryman and Harder.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **twenty-one (21) days** after being served with these findings and recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on

appeal. Wilkerson v. Wheeler, __ F.3d __, __, No. 11-17911, 2014 WL 6435497, at *3 (9th Cir. Nov. 18, 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **November 25, 2014**        /s/ Barbara A. McAuliffe
                                   UNITED STATES MAGISTRATE JUDGE